**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WANT AD DIGEST, INC.,**

                              **Plaintiff,**              **1:08-CV-189**
                                                          **(GLS/DRH)**

              **v.**

**DISPLAY ADVERTISING, INC.** *and*
**EDWARD H. SPAIN,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Girvin, Ferlazzo Law Firm              SALVATORE FERLAZZO, ESQ.
20 Corporate Woods Boulevard           ROBERT MANFREDO, ESQ.
2nd Floor
Albany, NY 12211-2350

**FOR THE DEFENDANTS:**

Office of Joshua A. Sabo               JOSHUA SABO, ESQ.
287 North Greenbush Road
Troy, NY 12180

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Want Ad Digest, Inc., ("Want Ad") brings this action against

defendants Display Advertising, Inc. ("Display") and Edward H. Spain, upon allegations that defendants have, *inter alia*, infringed Want Ad's copyrights in a publication of classified advertisements known as the *Want Ad Digest*. Pending are the parties' cross motions for summary judgment on plaintiffs' copyright infringement claims. For the reasons that follow, defendants' motion is granted in part, and the motions are otherwise denied.

## II. <u>Facts</u>

The following undisputed facts are drawn from the parties' statements of material facts.[1] Want Ad produces a weekly publication called the *Want Ad Digest*. (*See* Pl. SMF ¶ 1; Dkt. No. 15:3.) The ads contained in each publication are also published on Want Ad's website. *Id.* at ¶ 4. The *Want Ad Digest* contains both display ads, which are normally purchased by businesses, and classified ads, which are typically placed by individuals trying to sell various goods. *Id.* at ¶¶ 5-7. Plaintiffs contend that they substantially edit and format each classified advertisement submitted

_____

[1]The court notes that the preponderance of defendants' 7.1 denials are irrelevant, cite to evidence which was not provided to the court or are unsupported by the record citations. (*See* Def. RSMF ¶¶ 10-11, 17, 21-22, 28, 34, 45, 47, 49, 50, 52, 54-57, 63, 66, 70-73; Dkt. No. 22:2.) The court has disregarded such denials. *See Niagara Mohawk Power Corp v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) ("To survive summary judgment the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." (internal citations and quotation marks omitted; italics in original)).

before publication, though defendants have submitted a sampling of *Want Ad Digest* advertisements for which it appears that this is not the case. (*See* Pl. SMF ¶ 11-12, 16; Dkt. No. 15:3, Ex. B to Spain Aff.; Dkt. No. 22:8.)

Each page of the *Want Ad Digest* is organized into four columns, with the page number located at the top corner of each page. (*See* Pl. Exs. 10a-e; Dkt. Nos. 25:2-7.)  The top of each left handed page contains the weekly deadline for ad placement, the name of the publication, the issue number and date. *Id.* The top right hand page contains the name of the publication, two phone numbers for Want Ad, the issue number and the date. *Id.* The *Want Ad Digest* contains a table of contents and an index. *Id.* The table of contents is composed of main headings which are alphabetically arranged by general categories of goods ("Animals," "Appliances," etc.), with alphabetically arranged subheadings under each main heading setting forth types of goods ("Air Conditioners," "Dishwashers," etc.). *Id.* Following the table of contents, the subheadings appear to be roughly grouped according to general categories of goods. *Id.* The classified advertisements are then published alphabetically or by year under their corresponding subheading. *Id.* Each issue of the *Want Ad Digest* contains a copyright notice on the bottom of the first page of the

3

"Rates and Policies" page.  This notice states:

> COPYRIGHT 1978 BY WANT AD DIGEST, INC.... Trademarks
> & copyright is owned by Want Ad Digest Inc., 870 Hoosick Rd,
> Troy, NY 12180.  Published continuously since 1962.  All
> infringements will be prosecuted.

*Id.* Further, Want Ad owns copyright registrations on issues of the *Want Ad*

*Digest* as collective works.  (*See* Pl. SMF ¶¶ 33-34; Dkt. No. 15:3.)

Sometime in the past, defendant Spain solicited and obtained display

ads from businesses for publication in the *Want Ad Digest* pursuant to a

contract between his company, defendant Display, and Want Ad.  *Id.* at ¶¶

37, 40.  On December 19, 2007, defendants terminated this relationship to

pursue the establishment of the *Classified Advertiser*, of which Spain is the

owner.  *Id.* at ¶¶ 36, 46.  On December 26, 2007, defendants offered Want

Ad $2,000 to use the classified ads contained in the *Want Ad Digest* in the

*Classified Advertiser*.  *Id.* at ¶ 48.  Want Ad rejected this offer.  *Id.* at ¶ 49.

Nonetheless, the first volume of the *Classified Advertiser* was

predominantly composed of exact copies of ads and pictures appearing in

issue 51 of the *Want Ad Digest* or on Want Ad's website.  *Id.* at ¶¶ 54, 55,

66.  It also contained a small percentage of classified ads from the *Albany*

*Times Union* and the *Daily Gazette.  Id.* at ¶¶ 56, 57.  While defendants

4

stopped using classified ads from these latter sources upon request, subsequent volumes of the *Classified Advertiser* continued to contain between 50 and 80 percent of *Want Ad Digest's* classified ads.  Id. at ¶¶ 58, 59, 72, 73.  The final volume of the *Classified Advertiser* in which defendants used advertisements from the *Want Ad Digest* was Volume 9. *Id.* at ¶ 73.

Organizationally, each page of the *Classified Advertiser* is divided into four columns, with the page number located at the top corner of each page.  (*See* Exs. 7a-8c; Dkt. Nos. 15:11-15.)  The top of each page contains the name of the publication, a phone number, the issue number and the date.  *Id.*  The *Classified Advertiser* contains no table of contents, but has an index.  *Id.*  The index is composed of main headings which are alphabetically arranged by general categories of goods ("Animals," "Antiques," "Appliances," etc.), with alphabetically arranged subheadings under each main heading setting forth types of goods ("Air Conditioners," "Dishwashers," etc.).  *Id.*  The body of the *Classified Advertiser* is arranged in the same manner, with advertisements arranged alphabetically or by year under their corresponding subheading.  *Id.*

On February, 20, 2008, Want Ad filed this action, asserting claims

under, *inter alia*, the Copyright Act.  Pending are the parties cross motions

for summary judgment on these copyright claims.

### III.  Standard of Review

The standard for the grant of summary judgment is well-established,

and will not be repeated here.  For a full discussion of the standard, the

court refers the parties to its previous opinion in *Bain v. Town of Argyle,*

499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  Discussion

### A.    The Copyright Act

A copyright holder has a variety of rights under the Copyright Act,

including the exclusive rights "to reproduce the copyrighted work," "to

prepare derivative works based upon the copyrighted work," and "to

distribute copies ... of the copyrighted work to the public."  17 U.S.C. §

106(1)-(3).  To prevail on an assertion that these rights have been

infringed, "two elements must be proven: (1) ownership of a valid copyright,

and (2) copying of constituent elements of the work that are original."  *Feist*

*Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  Here,

the parties cross move for summary judgment on two copyright

infringement claims.  The first arises out of Want Ad's purported copyright

6

in the individual advertisements appearing in the *Want Ad Digest*.  The

second arises out of Want Ad's purported copyright in the *Want Ad Digest*

as a compilation.  The court addresses these claims in turn.

**B.    Copyright in the Individual Advertisements**

The parties do not dispute that  "[a]dvertisements are generally

capable of receiving copyright protection, provided that their material [has

some minimal degree of creativity or originality] and falls within one of the

categories of copyrightable subject matter set forth in 17 U.S.C. § 102."

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 950 (E.D.N.Y.

1987); *see also Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 894 (9th Cir.

1983); *MasterCard Intern. Inc. v. Nader 2000 Primary Committee, Inc.*, No.

00 Civ. 6068 (GBD), 2004 WL 434404, at *5 (S.D.N.Y. Mar. 8, 2004).

Further, there can be no denying that defendants copied advertisements

verbatim from the *Want Ad Digest* for use in the *Classified Advertiser*.  As

such, the heart of the parties' controversy is whether Want Ad owns a valid

copyright in the individual classified advertisements appearing in the *Want

Ad Digest*.  Defendants assert that Want Ad does not own such a copyright

because: 1) the copyrights in the classified advertisements belong to the

individuals placing the ads pursuant to the Second Circuit case of

*Brattleboro Publ'g Co. v. Winmill Publ'g Corp.*, 369 F.2d 565 (2d Cir. 1966); and 2) Want Ad failed to attach an individual notice of copyright to each advertisement under 17 U.S.C. § 404(a).  Contrarily, Want Ad contends that it does own a copyright in the individual advertisements because they are the product of Want Ad's originality and creativity.  None of these arguments suffice for a grant of summary judgment.

### 1.  *Brattleboro* and the "Work for Hire" Doctrine

First, the court addresses defendants' contention that Want Ad may not maintain an infringement action as to the individual advertisements appearing in the *Want Ad Digest* because, pursuant to *Brattleboro*, the copyrights in such advertisements belong to the persons placing them.

As defendants point out, *Brattleboro* held that a newspaper publisher who publishes advertisements as an independent contractor does not own the copyrights in such advertisements.  *See Brattleboro,* 369 F.2d at 567-68; *see also Elec. Publ'g Co. v. Zalytron Tube Corp.*, 376 F.2d 592, 593 (2d Cir. 1967).   Rather, the *Brattleboro* court found that such rights belonged to the person or entity who placed the advertisement.  *See Brattleboro*, 369 F.2d at 567-68; *see also Elec. Publ'g Co. v. Zalytron Tube Corp.*, 376 F.2d 592, 593 (2d Cir. 1967).  This decision was based upon

8

the then uncodified "work for hire" doctrine, which vests all copyrights in

original work created by an employee with the employer, regardless of the

employer's actual contribution to the work.  Defendants urge a similar

application of the doctrine here.

What defendants fail to acknowledge, however, is that Congress

codified the "work for hire" doctrine subsequent to *Brattleboro* in a way

which renders that case inapplicable here.  Under the current statute, a

classified advertisement may be considered a "work for hire" which

absolutely vests all copyrights in the person placing the advertisement, only

if:

> (1)  [the] work [is] prepared by an employee within the scope of his or her employment; or
>
> (2) [the] work [is] specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, *if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire*.

17 U.S.C. § 101 (emphasis added).

In the present instance, Want Ad is clearly not an employee of those

placing ads in the *Want Ad Digest*, rendering subsection (1) irrelevant.  *See*

9

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (factors to consider in determining whether party is an employee or an independent contractor).  Further, subsection (2) is inapplicable because there is no written statement between the parties that indicates the classified advertisements are to be considered works made for hire.  Thus, the classified advertisements appearing in the *Want Ad Digest* are not works made for hire, and Want Ad's claim of infringement as to these advertisements is not defeated by defendants invocation of the "work for hire" doctrine under *Brattleboro*.

## 2.  Section 404(a)

Defendants next contend that Want Ad cannot succeed on an infringement claim as to the individual advertisements because Want Ad failed to attach a copyright notice to each advertisement under 17 U.S.C. § 404(a).  This argument must also be rejected.

17 U.S.C. § 404(a) provides in relevant part that:

> A separate contribution to a collective work may bear its own notice of copyright.... However, a single notice applicable to the collective work as a whole is sufficient to [preclude the assertion of an innocent infringement defense by a defendant], as applicable with respect to the separate contributions it contains *(not including advertisements inserted on behalf of persons other than the owner of copyright in the collective*

10

*work)*, regardless of the ownership of copyright in the
contributions and whether or not they have been previously
published.

(emphasis added).  Interpreting this provision, a plethora of circuit courts

have found that a single notice of copyright in a collective work, such as

that found in the *Want Ad Digest*, is insufficient to give notice of copyrights

in the advertisements appearing in the collective work.  *See, e.g.,*

*TransWestern Publ'g Co. LP v. Multimedia Mktg. Assocs., Inc.,* 133 F.3d

773, 780-81 (10th Cir. 1998)*; Donald Frederick Evans and Assocs., Inc. v.*

*Continental Homes, Inc.,* 785 F.2d 897, 906-07 (11th Cir. 1986); *Canfield v.*

*Ponchatoula Times*, 759 F.2d 493, 497-500 (5th Cir. 1985).  Rather, the

protections of § 404(a) apply only to those advertisements which have their

own notice of copyright.  *See, e.g., TransWestern*, 133 F.3d at 780-81;

*Donald Frederick*, 785 F.2d at 906-07; *Canfield*, 759 F.2d at 497-500.  As

the classified advertisements appearing in the *Want Ad Digest* lack such

individual notices, they do not satisfy § 404(a).

However, this finding is not as potent as the parties clearly believe it

to be.  (*See* Pl. Reply Br. p. 5 n.3; Dkt. No. 28:3.)  Because the

advertisements at issue here were clearly published and distributed after

the March 1, 1989 effective date of the Berne Convention Implementation

Act, notice of copyright is not a necessary predicate to Want Ad's

infringement action, as it often is for works published before such date.

*See* 17 U.S.C. § 401(a); *Transwestern*, 133 F.3d at 782 (Briscoe, J.,

concurring); *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 48 (5th

Cir 1995); 18 AM. JUR. 2d *Copyright and Literary Property* § 123 (2009).  As

such, the only real repercussion of Want Ad's failure to satisfy § 404(a) is

defendants' ability to assert an innocent infringer defense, which is relevant

only to damages.  *See* 17 U.S.C. §§ 401(d), 404(a); *D.C. Comics Inc. v.*

*Mini Gift Shop*, 912 F.2d 29, 34-35 (2d Cir. 1990).  Accordingly, the court

declines to dismiss plaintiffs' copyright infringement claim for failure to

comply with § 404(a).

### 3. Originality or Creativity in the Classified Advertisements

Finally, the court addresses Want Ad's contention that it is entitled to

summary judgment because it owns valid copyrights in the classified

advertisements it publishes as the products of its original or creative efforts.

"The *sine qua non* of copyright is originality." *Feist*, 499 U.S. at 345.

Generally speaking, individuals may only claim a copyright in their original

work.  *See id.*  "Original, as the term is used in copyright means only that

the work was independently created by the author (as opposed to copied

from other works), and that it possesses at least some minimal degree of creativity." *Id.* "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Id.* Further, "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.*

Here, Want Ad contends that the classified advertisements published in the *Want Ad Digest* are original works of its authorship because "[p]laintiff's employees choose which [submitted] information to use in the ad and which information is extraneous, and abbreviates and arranges the order of the information so that it appears in a concise and readable format." Defendants have not directly responded to this argument. Nonetheless, even if the court were to accept that editing and arranging information into an advertisement is sufficient to warrant copyright protection, there are disputes as to whether Want Ad actually engages in these efforts. Defendants have provided evidence which establishes that, in at least some instances, Want Ad publishes classified ads which are virtually identical to its customers' submissions. (*See* Exhibit B to Spain Aff.; Dkt. No. 22:8.) As such, questions exist as to whether Want Ad has imbued its classified advertisements with the minimal degree of originality

required to provide a copyright therein.  Accordingly, Want Ad's motion for summary judgment is denied to the extent it contends defendants infringed its copyright in the individual classified advertisements appearing in the *Want Ad Digest*.

**C.    Infringement of the *Want Ad Digest* as a Compilation**

Next, the court addresses the parties' cross motions for summary judgment on Want Ad's claim that defendants infringed the copyright in the *Want Ad Digest* as a compilation.  This requires the court to examine the validity of Want Ad's compilation copyright, and whether such copyright was infringed.  *See Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 512 (2d Cir. 1991).

**1.    Copyrightability**

A compilation "is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  A "thin" copyright often attaches to compilations, which protects originality in the selection, coordination and arrangement of the materials therein.  *Feist*, 499 U.S. at 349.

Here, defendants concede that the *Want Ad Digest* is entitled to

14

copyright protection as a compilation.  However, they contend that this

copyright does not extend to the selection and arrangement of the

individual advertisements within the *Want Ad Digest* because there is no

enforceable copyright in these advertisements for the reasons discussed at

Point B.  The court cannot agree with the logic of this argument.  Aside

from the fact that defendants' invocation of *Brattleboro* and § 404(a) has

been rejected, Want Ad's copyright in the individual classifieds is

completely irrelevant to a claim of compilation infringement.  Again, this is

because a compilation copyright protects originality in the selection and

arrangement of materials, regardless of whether the materials themselves

are copyrightable.  *Feist*, 499 U.S. at 348.  Accordingly, defendants'

argument is without merit.

    However, the court's inquiry into the copyrighted elements of the

*Want Ad Digest* is not at an end.  Because Want Ad has moved for

summary judgment on its compilation claim, the court must still discern

exactly what such a copyright covers.  *See BellSouth Adver. & Publ'g Corp.

v. Donelley Info. Publ'g, Inc.*, 999 F.2d 1436 (11th Cir. 1993) (addressing

copyrightability of compilation despite concession of valid copyright).  Two

essential elements must be satisfied before a work is entitled to copyright

protection as a compilation.  First, the work must be a collection and
assembly of preexisting material or data.  *See Key Publ'ns, Inc.*, 945 F.2d
at 512.  The *Want Ad Digest* clearly satisfies this prong.  The second, and
more pertinent requirement, is that the material or data which makes up the
compilation must be selected, coordinated or arranged in an original way.
*Id.*

As to this second element, Want Ad asserts that it "arranges the
information it obtains into classified ads which are then arranged in a
particular manner within the *Want Ad Digest*," and that "[t]his originality
includes the use of font sizes, bolding certain text, the creation and use of
categories, subcategories, and ad headers, the organization and
appearance of each page within the *Want Ad Digest*, and the use of an
index and contents section."  However, many of these elements are clearly
not entitled to compilation protection.  First, the court notes that Want Ad
may not claim a copyright in its selection of classified advertisements, as it
exhibits no originality in this regard.  Originality in "[s]election implies the
exercise of judgment is choosing which facts from a given body of data to
include in a compilation."  *Key Publ'ns, Inc.*, 945 F.2d at 513 (citation
omitted); *see also Eckes v. Card Prices Update*, 736 F.2d 859, 862-63 (2d

16

Cir. 1984) (selectivity exhibited where 5,000 "premium" baseball cards were chosen from among 18,000).  Want Ad does not satisfy this definition, as it does not exercise any judgment in deciding which classifieds to include in the *Want Ad Digest*.  Rather, Want Ad merely publishes the classified advertisements its clients submit to it.[2]  (*See* Pl. SMF ¶¶ 7-9, 11; Dkt. No. 15:3.)  As such, Want Ad's clients, not Want Ad, dictate the selection of advertisements appearing in the *Want Ad Digest*.

Further, the compilation copyright in the *Want Ad Digest* does not extend to Want Ad's selection of the main headings and subheadings used to arrange the publication.  Headings and subheadings such as "Animals," "Cars," and "Furniture" are "entirely typical" for a classified advertisement publication, and using such headings "is not only unoriginal, it is practically inevitable."  *BellSouth Adver.& Publ'g Corp.*, 999 F.2d at 1442, 1444 (quoting *Feist*, 499 U.S. at 362-63) (finding no originality in yellow page headings such as "Attorneys," "Banks," or "Criminal Law").

Finally, the court notes that, to the extent *Want Ad Digest's* table of

---

[2]This is in stark contrast to the situation in *Key Publ'ns, Inc.*, where "in assembling the [compilation, Plaintiff] had to select from a multitude of businesses in New York and elsewhere[,] those of greatest interest to her audience-the New York City Chinese-American community" and "excluded from the directory those businesses she did not think would remain open for very long."  *Key Publ'ns, Inc.*, 945 F.2d at 513.  Want Ad has not similarly discriminated in publishing advertisements submitted to it.

contents, index, and listings of advertisements are arranged alphabetically

or chronologically, no compilation copyright adheres to such arrangement.

As Want Ad itself recognizes, originality in "arrangement refers to the

ordering of groups of [materials] into lists or categories that go beyond

mere mechanical grouping[s] as such, for example the alphabetical,

chronological, or sequential listings of data." *Key Publ'ns, Inc.*, 945 F.2d

513-14 (citation omitted).

This leaves Want Ad's arrangement of subheadings within the body

of the publication.  It would appear that rather than arranging this aspect of

the *Want Ad Digest* in some mechanical order, Want Ad has loosely set

forth the subheadings by general category of products, allegedly to "most

successfully facilitate[] the sale of advertised goods."  This arrangement

clearly demonstrates some minimal spark of creativity and is thus entitled

to copyright protection.  As such, it becomes necessary to determine

whether defendants infringed this element of the *Want Ad Digest*.

### 2.    Infringement

"Whether a compilation has been infringed requires a somewhat

more refined analysis than is applied in a case involving a wholly original

work."  *Id.* at 514.  "Although the test for infringement of original works and

compilations is one of 'substantial similarity' the appropriate inquiry is narrowed in the case of a compilation" given the "thin" copyright which adheres to such works.  *Id.*  Accordingly, [w]hat must be shown [here] is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation."  *Id.*

In attempting to show compilation infringement in the present instance, Want Ad makes much of the fact that defendants copied advertisements verbatim from the *Want Ad Digest* for use in the *Classified Advertiser*.  This analysis misses the mark.  As addressed in Point B supra, defendants' wholesale conversion of classified advertisements from the *Want Ad Digest* may give rise to an infringement action as to the individual advertisements themselves.  However, such copying does not give rise to a compilation infringement claim to the extent it resulted in identical arrangement or selection of advertisements between the two publications because, again, there was no originality in such selection or arrangement.[3]

---

[3]For similar reasons, Want Ad's headings and subheadings may not be the basis for an infringement claim.  In any event, the court notes that there is significant divergence between the headings and subheadings used in the *Classified Advertiser* and the *Want Ad Digest*.  Indeed, only 19 of the 40 main headings used by the *Want Ad Digest* appear verbatim in the *Classified Advertiser*.  Further, the *Classified Advertiser* makes use of numerous main headings and subheadings which do not appear in the *Want Ad Digest* at all.  Accordingly, even if Want Ad could claim a copyright in its selection of headings and sub-headings, there is no substantial similarity between such elements and thus no infringement of them.

Rather, the sole aspect of the *Want Ad Digest* which is entitled to copyright

protection as a compilation is the arrangement of subheadings within the

body of the publication.

    As to this element, there is no substantial similarity between the *Want*

*Ad Digest* and the *Classified Advertiser*.  The body of the *Classified*

*Advertiser* is arranged alphabetically by main heading, then alphabetically

by subheading.  Contrarily, the body of the *Want Ad Digest* makes no use

of main headings at all, but is rather arranged under subheadings which

are grouped roughly by general categories of goods.  As these methods of

arrangement clearly differ significantly, the court determines as a matter of

law that the *Classified Advertiser* has not infringed *Want Ad Digest's*

compilation copyright, and such claim is dismissed.

## V.  Conclusion

    **WHEREFORE**, for the foregoing reasons, it is hereby

    **ORDERED** that Want Ad's motion for summary judgment is **DENIED**;

and it is further

    **ORDERED** that defendants' motion for summary judgment is

**DENIED** insofar as it seeks dismissal of Want Ad's infringement claim

regarding the individual advertisements and **GRANTED** insofar as it seeks

dismissal of Want Ad's compilation infringement claim; and it is further

**ORDERED** that the Clerk of the Court provide copies of this Order to

the parties by regular mail.

**IT IS SO ORDERED.**

September 3, 2009
Albany, New York

_____
United States District Court Judge